# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

BECKY CHAVEZ,

       Plaintiff,

vs.                                                                    No. 01cv0921 JP/JHG

JOANNE B. BARNHART,[1]
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

       This matter is before the Court on Plaintiff's (Chavez') Motion to Reverse or Remand Administrative Decision, filed April 5, 2002. The Commissioner of Social Security issued a final decision denying Chavez' application for disability insurance benefits and supplemental security income. The United States Magistrate Judge, having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, finds the motion to remand is not well taken and recommends that it be DENIED.

       Chavez, now thirty-eight years old, filed her application for disability insurance benefits and supplemental security income on March 23, 1998, alleging disability since October 1993, due to gastroesophageal reflux disease (GERD), irritable bowel syndrome (IBS), cystitis, depression and post-traumatic stress disorder (PTSD). She has a GED with past relevant work as a data entry clerk, receptionist and clerk/typist. On April 24, 2000, the Commissioner's Administrative

---

[1] On November 9, 2001, JoAnne B. Barnhart was sworn in as Commissioner of the Social Security Administration. Thus, she is substituted as Defendant in this action.

Law Judge (ALJ) denied benefits, finding Chavez had "severe impairments, consisting of gastroesophageal reflux disease, irritable bowel syndrome and cystitis, but she did not have any disorder or combination of disorders meeting or equaling in severity any of the disorders described in the Listing of Impariments. Subpart P, Appendix 1. Tr. 14. Additionally, the ALJ found Chavez' depression and PTSD were not "severe" because they did not significantly interfere with her ability to perform basic and routine work activities. The ALJ further found Chavez retained the residual functional capacity (RFC) for light or sedentary level work and thus could perform her previous jobs as a data entry clerk or receptionist. Tr. 20. As to her credibility, the ALJ found Chavez' testimony did not credibly establish functional limitations to the extent alleged. Tr. 15. Chavez filed a Request for Review of the decision by the Appeals Council. On July 25, 2001, the Appeals Council denied Chavez' request for review of the ALJ's decision. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Chavez seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial evidence,"

*Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Barker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989). "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson v. Sullivan*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20

3

C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Id.*

In support of her motion to reverse or remand, Chavez makes the following arguments: (1) the ALJ erred in finding her mental problems were not severe; (2) the ALJ incorrectly determined she could perform her past relevant work; and (3) the ALJ erred in his credibility finding.

Chavez contends the ALJ's finding that her mental impairment was not severe is not supported by substantial evidence and is contrary to law. While Chavez bears the burden of proving her disability, at step two her burden is "de minimis." At step two, a claimant is required only to make a "de minimis showing" that her medically determinable impairments, in combination, are severe enough to significantly limit her ability to perform work-related activity. *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). Although an impairment is not severe if it has no more than a minimal effect on an individual's physical or mental abilities to do basic work activities, the possibility of several such impairments combining to produce a severe impairment must be considered. *See* SSR 85-28, 1985 WL 56856, at *3, *4 (1985).

Under 20 C.F.R. §§ 404.1523 & 416.923, when assessing the severity of whatever impairments an individual may have, the adjudicator must assess the impact of the combination of those impairments on the person's ability to function, rather than assess separately the contribution of each impairment to the restriction of his or her activity as if each impairment existed alone. A claim may be denied at step two only if the evidence shows that the individual's

4

impairments, when considered in combination, are not medically severe, i.e., do not have more than a minimal effect on the person's physical or mental abilities to perform basic work activities. 20 C.F.R. §§ 404.1521 & 416.921. If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process. 20 C.F.R. §§ 404.1523 & 416.923.

Additionally, in assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe. SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996). Although a not severe impairment standing alone may not significantly limit an individual's ability to do basic work activities, it may be critical to the outcome of a claim when considered with limitations or restrictions due to other impairments. *Id.* In some instances, limitations due to a "not severe" impairment in combination with limitations imposed by an individual's other impairments, may prevent a claimant from performing past relevant work or may narrow the range of other work that the individual may still be able to do. *Id.*

In this case, the ALJ found at step two of the sequential evaluation process that Chavez' mental impairments were not "severe" because they did not significantly interfere with her ability to perform basic and routine work activities. Tr. 15. The ALJ further found "there [was] relatively little mention of this problem in the medical record, and no history of treatment for mental problems." Tr. 17. Additionally, the ALJ found as follows:

> There is little evidence in the record of a severe mental impairment. Treating physicians mentioned on several occasions that the claimant appeared to be depressed, largely over situational issues such as a divorce and occasional flashback memories of marital abuse. They prescribed anti-depressant medication, but the claimant appears not to have taken it, and at times denied that she even had

5

> any mental problems. She told Dr. Carroll in July 1998 that she had never received psychiatric treatment or used psychotrophic medications. During her mental status examination, Dr. Carroll observed that the claimant was fully oriented and that her cognition appeared to be intact. Dr. Carroll concluded that she had the necessary job skills to perform work as a receptionist. The evidence clearly shows that Ms. Chavez has the mental capability to perform basic and routine work activities.

Tr. 18-19.

Although the ALJ termed Chavez' mental impairments as not severe, nonetheless, he proceeded to address them as if they were severe and referred Chavez to a psychiatrist for a consultative psychiatric evaluation. Dr. Carroll evaluated Chavez on July 23, 1998, and noted Chavez had reported she had "no psychiatric diagnosis and [had] never seen a psychiatrist nor been hospitalized for psychiatric difficulty." Tr. 409. Chavez also reported she had never had psychotherapy because she had "no dollars nor transportation for psychotherapy." Tr. 412. Moreover, Chavez reported that her primary care physician had offered her Zoloft, an antidepressant, but she refused to take it after reading about Zoloft. *Id.* This is consistent with Chavez' response in her Disability Supplemental Interview Outline in which she reported "I've asked my doctor why I'm tired all the time and why I lack the energy I once had had (sic). She diagnosed me with depression and prescribed some medication "Zoloft" and (sic) anti-depressant. I refused to fill the Rx because of the side affects (sic)." Tr. 139.

The ALJ noted Chavez' "history of noncompliance with medications and medical procedures." Tr. 17, 18. Failure to follow a prescribed course of treatment, without good reason, is grounds for denial of disability benefits, 20 C.F.R. 404.1530(b), and can be the basis for discrediting claimant's subjective complaints. *See Diaz v. Secretary of Health & Human Servs.,* 898 F.2d 774, 777 (10th Cir. 1990). Chavez claimed she never sought psychotherapy because she did not have the resources or transportation to seek psychotherapy. However, in her Disability

Supplemental Interview Outline, Chavez reported she did not drive but her "boyfriend drives us everywhere we need to go." Tr. 143, 155. Chavez was also aware of the services offered by UNM Medical Center but never sought help for her depression or PTSD. Tr. 162 ("I've been able to seek medical care and priscriptions (sic) because I qualified for 'out-of-county assistance' through University of New Mexico Hospital."). There is no evidence in the record indicating Chavez sought an alternative medication for her depression. Accordingly, it was proper for the ALJ to consider Chavez' refusal to take Zoloft for her depression.

Dr. Carroll also noted inconsistencies in Chavez' story. Chavez reported her husband hit her but then stated he never hit her. Tr. 411. Dr. Carroll assessed Chavez as suffering from PTSD and again noted that there were inconsistencies in her reports of abuse by her ex-husband. Tr. 412. Notably, Dr. Carroll opined Chavez had job skills in the receptionist area. *Id.*

Relying on Dr. Carroll's evaluation, the ALJ completed the Psychiatric Review Technique (PRT) form and found Chavez' mental impairment(s) did not preclude her from all work. The opinions of specialists related to their area of specialty are entitled to more weight than that of a physician who is not a specialist in the area involved. See 20 C.F.R. § 404.1527(d)(5). Therefore, it was proper for the ALJ to rely on Dr. Carroll's evaluation. Moreover, the ALJ also relied on the DDS doctors' reports. Tr. 413-416 (Mental Residual Functional Capacity Assessment by Dr. Gucker, a psychologist), Tr. 417-425 (Psychiatric Review Technique Form by Dr. Gucker), Tr. 426-434 (Psychiatric Review Technique Form by Dr. Scherr, a psychologist). Findings regarding the nature and severity of an impairment made by state agency consultants and other program physicians and psychologists "must be treated as expert opinion evidence of nonexamining sources." SSR 96-6p, 1996 WL 374180, at *1.

The ALJ also relied on Chavez' questionnaires outlining her daily activities, hobbies, etc. Tr. 139-163. For example, Chavez reported she cleaned the house( 1-2 hours), did the laundry daily (one hour), went shopping weekly, read the newspaper, magazines and books daily, watched television for about five to six hours daily, visited with friends twice a week and went dancing on weekends, and visited with her sister. Statements regarding daily activities are evidence properly considered under the Commissioner's regulations. *See* 20 C.F.R. §§ 404.1529(a); 416.929(a). Therefore, the ALJ properly considered this evidence. Based on the record as a whole, the ALJ properly evaluated Chavez' mental impairments.

Chavez also contends the ALJ's RFC finding and his past relevant work analysis is not supported by substantial evidence and is contrary to law. At step four, a claimant bears the burden of proving that her medical impairments prevent her from performing work that she has performed in the past. *See Williams v. Bowen*, 844 F.2d at 751 & n.2. However, in order to make the ultimate finding that a claimant is not disabled at step four, the ALJ is required by the agency's rulings to make specific and detailed predicate findings concerning the claimant's residual functional capacity, the physical and mental demands of the claimant's past jobs, and how these demands mesh with the claimant's particular exertional and nonexertional limitations. See SSR 96-8p, 1996 WL 374184 at *3 (July 2, 1996) , SSR 82-62, 1982 WL 31386 at *4 (1985), see also *Winfrey v. Chater*, 92 F.3d 1017, 1023-25 (10th Cir.1996).

While "[t]he record must demonstrate that the ALJ considered all of the evidence, . . . an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Here, the ALJ made the necessary findings required by the regulations and rulings at step four. Specifically, the ALJ cited to exhibits 4E and 5E to support his RFC finding.

8

In exhibit 4E, Chavez gives a fairly detailed description of the jobs she performed in the past and the duties each job required. Tr. 116-128. The ALJ also had the psychiatrist's opinion that Chavez could do receptionist type work and the PRT forms and Mental Residual Functional Capacity assessment performed by the DDS consultants.

Finally, Chavez contends the ALJ erred in concluding her testimony was not credible. Credibility determinations are peculiarly the province of the finder of fact and will not be upset when supported by substantial evidence. *Diaz v. Secretary of Health and Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir. 1988).

In his April 24, 2000 Decision, the ALJ found Chavez not credible for several reasons and affirmatively linked his findings to the evidence. For example, the ALJ found the "radiographic and clinical evidence for the most part does not corroborate or support the alleged intensity and frequency of her pain complaints." Tr. 18. The ALJ then cited to the record to support this finding. The ALJ also found the "[p]hysical examinations likewise have reported few significant clinical findings other than some mild abdominal tenderness." Tr. 18. Again the ALJ cited to the record to support his finding. As to Chavez' mental impairments, the ALJ noted, "[t]here is little evidence in the record of severe mental impairments." Tr. 18. The ALJ cited to the record to support this finding. Finally, the ALJ compared the inconsistencies in Chavez' September 1998 questionnaire to the questionnaire of March 1998. Tr. 19. The ALJ thoroughly discussed the discrepancies and found Chavez not credible. Substantial evidence supports the ALJ's credibility determination.

9

**RECOMMENDED DISPOSITION**

The ALJ applied correct legal standards and his decision is supported by substantial evidence. Chavez' Motion to Reverse or Remand Administrative decision, filed April 5, 2002, should be denied and this case dismissed.

_____
JOE H. GALVAN
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Within ten days after a party is served with a copy of these proposed findings and recommended disposition that party may, pursuant to 28 U.S.C. § 636 (b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.